UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CORRIE L. PERVAIZ,

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

18-CV-1283

DECISION & ORDER

---

On November 14, 2018, the plaintiff, Corrie L. Pervaiz, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On July 22, 2019, Pervaiz moved for judgment on the pleadings, Docket Item 9; on September 20, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on October 11, 2019, Pervaiz replied, Docket Item 14.

For the reasons stated below, this Court grants Pervaiz's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.   PROCEDURAL HISTORY

On January 1, 2015, Pervaiz applied for Supplemental Security Income. Docket Item 7 at 79. She claimed that she had been disabled since May 27, 2014, due to

bipolar disorder, panic disorder, anxiety, posttraumatic stress disorder ("PTSD"), and depression. *Id.* at 162, 166.

On April 14, 2015, Pervaiz received notice that her application was denied because she was not disabled under the Act. *Id.* at 80. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 88, which was held on August 7, 2017, *id.* at 39-67. The ALJ then issued a decision on December 12, 2017, confirming the finding that Pervaiz was not disabled. *Id.* at 15-23. Pervaiz appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 4-6.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Pervaiz's claim. Pervaiz was examined by several different providers, but the records of professionals at Horizon Mental Health; Gregory Fabiano, Ph.D.; T. Harding, Ph.D.; and Kalaiselvi Rajendran, M.D., are of most significance to the claim of disability here.

### A. Horizons Mental Health

On November 14, 2014, Pervaiz began treatment at Horizons Mental Health. *See id.* at 209-32. She received individual therapy every two weeks and medication management once a month through at least March 6, 2017. *Id.* at 241-42, 440.

On December 8, 2014, Nurse Practitioner ("NP") Chelsea Kendra diagnosed bipolar disorder, panic disorder with agoraphobia, and possible PTSD. *Id.* at 335. She noted that Pervaiz had an anxious mood and poor concentration but normal speech and orientation, logical and goal-directed thought processes, no delusions, fair insight and judgment, and intact memory. *Id.* at 336-37. NP Kendra found no risk of suicide. *Id.* at 340. She prescribed anti-anxiety and antidepressant medications, recommended that

2

Pervaiz "continue . . . psychotherapy," and scheduled a follow-up appointment for continued medication management. *Id.* at 238. Through at least March 2017, NP Kendra noted the same symptoms discussed above, with the occasional observation of rapid speech or obsessive thought processes. *See id.* at 344-440 (fourteen treatment notes). On July 20, 2016, and August 31, 2016, NP Kendra noted that Pervaiz had "good concentration," but subsequent notes do not provide any assessment of Pervaiz's functioning in this area. *See id.* at 399-440. NP Kendra added a diagnosis of obsessive-compulsive disorder ("OCD") on May 4, 2015, and of attention-deficit hyperactivity disorder ("ADHD") on June 2, 2016. *See id.* at 364, 391.

On February 16, 2015, Pervaiz began individual psychotherapy with Lindsey Rickard, M.A. *Id.* at 240. Ms. Rickard found no risk of suicide. *Id.* There are no treatment notes from Ms. Rickard in the record.

### B. Gregory Fabiano, Ph.D.

On March 17, 2015, Dr. Fabiano, a psychologist, completed a consultative psychological evaluation of Pervaiz for the Social Security Administration ("SSA"). *Id.* at 248-52. Dr. Fabiano opined that Pervaiz had no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions; but he opined that she was mildly limited in her ability to relate adequately with others, maintain attention and concentration, and appropriately deal with stress. *Id.* at 251. Although these limitations appeared "consistent with psychiatric problems," Dr. Fabiano found that they were not "significant enough to interfere with [Pervaiz's] ability to function on a daily basis." *Id.*

3

### C. T. Harding, Ph.D.

On April 14, 2015, Dr. Harding, a psychologist, reviewed the medical evidence in the record—specifically, Dr. Fabiano's consultative evaluation—and provided the SSA with an assessment of Pervaiz's mental residual functional capacity. *Id.* at 66-78. Dr. Harding opined that Pervaiz was "[n]ot significantly limited" in the areas of understanding and memory but had moderate limitations in the areas of concentration and persistence, social interaction, and adaptation. *Id.* at 74-75. In particular, she was moderately limited in carrying out detailed (but not simple) instructions, making simple work-related decisions, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. *Id.*

### D. Kalaiselvi Rajendran, M.D.

On February 5, 2009, Pervaiz began treatment with Dr. Rajendran, a psychiatrist. *Id.* at 442. Dr. Rajendran evaluated Pervaiz at least twice more—on September 29, 2015, and January 8, 2016. *Id.* at 444-48. Dr. Rajendran diagnosed bipolar disorder and generalized anxiety disorder, and he prescribed anti-anxiety, mood-stabilizing, and antidepressant medications. *Id.* at 446, 447. Dr. Rajendran also noted that Pervaiz's speech was clear and coherent, she had no hallucinations or delusions, her memory was intact, but her mood was anxious and her insight and judgment were poor. *Id.* at 445, 447. Dr. Rajendran found that Pervaiz was not suicidal. *Id.*

## III. THE ALJ'S DECISION

In denying Pervaiz's application, the ALJ evaluated Pervaiz's claim under the Administration's five-step evaluation process for disability determinations. *See*

20 C.F.R § 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 416.920(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 416.920(a)(4)(i). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 416.920(a)(4)(iv); 416.920(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* § 416.945

After determining the claimant's RFC, the ALJ completes step four. § 416.920(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 416.920(f). But if the claimant cannot, the ALJ proceeds to step five. §§ 416.920(a)(4)(iv); 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 416.920(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ found at step one that Pervaiz had not engaged in substantial gainful activity since she had applied for benefits. Docket Item 7 at 17. At step two, the ALJ found that Pervaiz had "the following severe impairments: bipolar disorder, affective disorder and anxiety disorder." *Id.*

At step three, the ALJ determined that Pervaiz did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* More specifically, the ALJ found that Pervaiz's mental impairments did not meet Listing 12.04 (depressive, bipolar, and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorders) because Pervaiz did not have at least two marked limitations or one extreme limitation in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself. *Id.* at 17-19.

The ALJ then found that Pervaiz had the following RFC:

> [Pervaiz can] perform a full range of work at all exertional levels, but with the following nonexertional limitations: [She] can perform simple, routine tasks. [She] cannot work in a fast-paced production environment. She can tolerate jobs involving only simple, work-related changes in the job

6

environment. [She] can have frequent interaction with supervisors as part of a job, and occasional interaction with co-workers, but she can have no interaction with the public.

*Id.* at 19. The ALJ explained that although "[Pervaiz]'s medically determinable impairments could reasonably be expected to cause [her] alleged symptoms[,] . . . [Pervaiz]'s statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 19-20. In reaching this determination, the ALJ gave "little weight" to the Global Assessment of Functioning ("GAF") scores reported by medical professionals at Horizons Mental Health; "substantial weight" to the opinion of the consulting psychologist, Dr. Fabiano; and "significant weight" to the opinion of the non-examining, consulting psychologist, Dr. Harding. *Id.* at 20-21.

At step four, the ALJ found that Pervaiz was unable to perform her past relevant work as a night auditor. *Id.* at 22. But at step five, the ALJ found that "[c]onsidering [Pervaiz's] age, education, work experience, and [RFC], there [were] jobs that exist[ed] in significant numbers in the national economy that [Pervaiz] could perform." *Id.* Specifically, the ALJ credited the testimony of a vocational expert that Pervaiz could find work as a laundry worker, mail room clerk, or office helper. *Id.* at 23.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social

7

Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Pervaiz argues that the ALJ erred in three ways in determining that she was not disabled. Docket Item 9-1 at 13-28. First, Pervaiz argues that the ALJ erred by relying on the opinions of two consultants, one who examined her only once and a second who never examined her. *Id.* at 13-20. Second, Pervaiz argues that the ALJ erred by "cherry-pick[ing]" evidence. *Id.* at 20-25. Finally, Pervaiz argues that the ALJ erred by not accounting for her stress-based functional limitations in determining her RFC. *Id.* at 25-28. She argues that the ALJ's determination therefore is not supported by substantial evidence and thus warrants remand for proper consideration of her mental RFC. *Id.* at 28.

## II. ANALYSIS

### A. Consulting Physicians and the ALJ's Duty to Develop the Record

Pervaiz argues that the ALJ erred by relying on the opinions of two consulting mental health professionals. *Id.* at 13-20. This Court agrees.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* at 79 n.5 (quoting *Perez*, 77 F.3d at 48)). The Commissioner's own regulations reflect this duty, stating that "[b]efore [the Commissioner] make[s] a determination that [a claimant is] not disabled, [the Commissioner] will develop [the claimant's] complete medical history . . . [and] will make every reasonable effort to help [the claimant] get medical reports from [her] own medical

9

sources when [she] give[s] [the Commissioner] permission to request the reports." 20 C.F.R. § 404.1512(d)(1).

The Commissioner's regulations further explain that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[1]) (additional citation omitted). That is so because the opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with claimants and therefore are most able to "provide . . . detailed, longitudinal picture[s] of [claimants'] medical impairments"—are entitled to "controlling weight" so long as they are "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the claimant's] case record."[2] *See* 20 C.F.R. §§ 416.913(a) (2015), 416.927(c)(2)

---

[1] This section was amended, effective March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Pervaiz applied for disability benefits on January 1, 2015—that is, before the date the changes became effective—her claim is governed by the prior regulation. *See id.* at 5844-46.

[2] Indeed, an ALJ may not give a treating source's opinion anything less than controlling weight unless he first "explicitly consider[s], *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). "An ALJ's failure to 'explicitly' apply [these] factors [before] assigning [less-than-controlling] weight" to a treating source opinion "is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

10

(2015); see also *Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008) (summary order).

The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Tankisi*, 521 Fed. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted). Although "remand is not always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is appropriate where the records are not otherwise complete. *See Tankisi*, 521 Fed. App'x at 34. That is the case here.

In determining that Pervaiz had the mental RFC to "perform simple, routine tasks" so long as she was not working "in a fast-paced production environment" and had only "simple, work-related changes in the job environment[,] . . . frequent interaction with supervisors[,] . . . occasional interaction with co-workers, . . . [and] no interaction with the public," Docket Item 7 at 19, the ALJ relied on the opinions of two consulting psychologists. First, he accorded "substantial weight" to the opinion of the one-time examining consultant, Dr. Fabiano, that Pervaiz was mildly limited in her ability to relate adequately with others, maintain attention and concentration, and appropriately deal with stress. *Id.* at 21 (citing *id.* at 251). Second, he accorded "significant weight" to the opinion of the non-examining consultant, Dr. Harding, that Pervaiz was moderately

11

limited in carrying out detailed (but not simple) instructions, making simple work-related decisions, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. *Id.* at 21 (citing *id.* at 74-75).

But the ALJ did not rely at all upon any opinion of Dr. Rajendran, Pervaiz's treating psychiatrist. *See id.* at 19-21 (citing specific clinical data points reported by Dr. Rajendran but never citing any opinion evidence). And he only once cites an opinion offered by NP Kendra, Pervaiz's treating nurse practitioner, and then only to give "little weight" to NP Kendra's rating of Pervaiz at 49 on the GAF scale. *See id.* at 20 & n.1 (citing *id.* at 233). The ALJ asserted that although NP Kendra's January 2015 rating "indicat[ed] serious impairment in social, occupation, or school functioning," it was "not supported by the mental status findings" on that date and, in any event, "[did] not provide a reliable longitudinal picture of [Pervaiz's] mental functioning" because it assessed her functioning only "at a particular moment in time, much like a snapshot." *Id.* at 20 & n.1.

The ALJ's mental RFC determination was erroneous in several respects. First, the ALJ's analysis violated the Commissioner's own regulations, which "impose on the ALJ a duty to solicit" a medical source statement from a claimant's treating physician. *See Tankisi*, 521 Fed. App'x at 33 (citing former 20 C.F.R. § 416.913(b)(6)). The ALJ thus should not have relied exclusively on the opinions of Dr. Fabiano, who examined Pervaiz only once, and Dr. Harding, who never examined her. Instead, he should have requested a medical source statement from Dr. Rajendran and, possibly, NP Kendra

12

and Ms. Rickard, Pervaiz's therapist[3]. And because the ALJ's determination that Pervaiz could "perform simple, routine tasks," Docket Item 7 at 19, likely constituted an implicit rejection of NP's Kendra's diagnoses of ADHD and OCD and her opinion that Pervaiz had poor concentration skills, *see, e.g., id.* at 344, 364, 391, this Court finds no assurance that the ALJ's error was harmless.

Second, it was illogical for the ALJ to discount NP Kendra's GAF score as a "snapshot" while also finding Dr. Fabiano's opinion, formed after a single examination—and Dr. Harding's opinion, based largely on Dr. Fabiano's records—"significant[ly]" and "substantial[ly]" probative of Pervaiz's mental functioning. And that is particularly so here given that NP Kendra's "snapshot" was relatively consistent over the course of more than two years[4] and was at least similar to the GAF ratings of Dr. Rajendran[5]. What is more, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," a "concern [that] is

---

[3] Although when Pervaiz filed her claim, nurse practitioners and therapists were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment," an opinion from such a source still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006); *cf.* 20 C.F.R. § 416.902(a)(7) (2017) (expanding list of "acceptable medical sources" to include "licensed advanced practice registered nurse[s]"). Because NP Kendra and Ms. Rickard treated Pervaiz for nearly two years, an ALJ could reasonably find that their opinions deserve significant weight.

[4] *See id.* at 343, 350, 357, 364, 371, 378 (giving Pervaiz a GAF score of 49 from January through June 2015); *see also id.* at 385-440 (providing no GAF rating from May 2016 through March 2017).

[5] *See id.* at 445 (giving Pervaiz a GAF score of 55 on September 29, 2015); *id.* at 442-43, 447-48 (providing no GAF rating in February 2009 and January 2016).

13

even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (first quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam)); *see also id.* at 97 (explaining that because "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]" (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).

The ALJ also erred in relying on the opinion of Drs. Fabiano and Harding to determine Pervaiz's mental RFC because those opinions were stale by the time the ALJ rendered his decision. Although the "mere passage of time does not render an opinion stale," *Whitehurst v. Berryhill*, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018), "significant developments" in an individual's medical history after the examination underlying an opinion might. *Davis v. Berryhill*, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018). Here, NP Kendra diagnosed OCD in May 2015 and ADHD in June 2016, *see* Docket Item 7 at 364, 391; Pervaiz thus was diagnosed with "significant" mental health disorders after Dr. Fabiano's March 2015 and Dr. Harding's April 2015 opinions, making those opinions stale. "A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). At the very least, the ALJ was obligated to obtain a mental health opinion from an examination conducted after those significant diagnoses.

14

In short, because there was an "obvious gap[ ] in the administrative record" as it related to Pervaiz's mental functioning, the ALJ was obligated make a reasonable effort to fill that gap before rejecting Pervaiz's application for disability benefits. More specifically, the ALJ was required to obtain a non-stale medical source statement from a treating source. *See Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)). Because he did not do so, the Court remands the matter so that the ALJ may develop the record and then re-evaluate Pervaiz's application in light of the expanded record.

In light of this result, the Court will not reach the remaining arguments raised by Pervaiz. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by [the claimant] because they may be affected by the ALJ's treatment of this case on remand."); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). But on remand, the ALJ should consider and specifically address the impact of Pervaiz's poor response to stress on her ability to work. *See Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996)) ("Because stress is 'highly individualized,'" the ALJ must "make specific findings about the nature of [the claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work.").

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Pervaiz's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: December 17, 2019
        Buffalo, New York

                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE